IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


BRUCE A. ROGERS            :    CIVIL ACTION
                           :    NO. 11-1111
     Plaintiff,            :
                           :
     v.                    :
                           :
TRISTAR PRODUCTS, INC.     :
                           :
     Defendant.            :




M E M O R A N D U M


EDUARDO C. ROBRENO, J.                          JUNE 2, 2011

I.   INTRODUCTION................................................1
II.  BACKGROUND.................................................3
III. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A
     CLAIM.....................................................4
     A.   Legal Standard.......................................4
     B.   Discussion...........................................6
IV.  DEFENDANT'S MOTION TO DISMISS ON CONSTITUTIONAL GROUNDS...11
     A.   Historical Background...............................11
          1.   Legislative History...........................11
          2.   Recent Caselaw Developments...................13
     B.   Current Constitutional Landscape....................15
          1.   Morrison's Sufficient Control Test............17
          2.   Caselaw Finding Section 292(b)
               Unconstitutional..............................19
          3.   Caselaw Rejecting Constitutional Challenges to
               Section 292(b).................................22
     C.   Discussion..........................................24
          1.   Morrison's Sufficient Control Test Governs.....25
          2.   Application of Morrison........................28
V.   CONCLUSION...............................................32

I.   **INTRODUCTION**

          Plaintiff Bruce Rogers ("Plaintiff") brings this <u>qui</u>

<u>tam</u> action against Defendant Tristar Products, Inc.

("Defendant"). Plaintiff alleges that Defendant falsely marked one of its products as patented for the purpose of deceiving the public in violation of the False Marking Statute, 35 U.S.C. § 292, and seeks recovery under a qui tam enforcement provision in the statute that permits "[a]ny person [to] sue for the penalty." Id. § 292(b). Defendant moves to dismiss Plaintiff's complaint on two grounds. First, Defendant contends that Plaintiff's complaint fails to state a claim upon which relief can be granted. Second, Defendant urges that the qui tam provision of the False Marking Statute is unconstitutional under Article II of the United States Constitution.[1]

As outlined below, the Court finds that Plaintiff's complaint states a claim under the False Marking Statute. The Court concludes, however, that the qui tam provision under which Plaintiff proceeds violates the Take Care Clause in Article II of the United States Constitution and is therefore unconstitutional.

_____

[1]    At the hearing on Defendant's motion, Defendant vaguely suggested that a similar action was filed against it in another district court. However, neither Defendant's briefing nor oral argument contended that Plaintiff's suit was barred under any "first-to-file" limitation that may be applicable to actions under section 292(b). See Champion Labs., Inc. v. Parker-Hannifin Corp., No. 10-2371, 2011 WL 1883832, at *5 (E.D. Cal. May 17, 2011) (concluding that a statutory first-to-file bar in the False Claims Act "applies with equal force to false patent marking qui tam actions"). Therefore, the Court does not consider or decide whether a first-to-file limitation applies to actions under section 292(b).

Consequently, Defendant's motion to dismiss will be granted.[2]

## II.  BACKGROUND[3]

Defendant markets and sells the Jack LaLanne Power Juicer (the "Power Juicer") line of products in the United States and abroad.  (See Compl. ¶¶ 7, 25.)  The Power Juicer products have been successful, exceeding $300 million in sales.  (See id. ¶ 8.)  Defendant markets the Power Juicer products as having "Special Patented Extraction Technology" that "delivers up to 30% more juice than other juicers."  (Id. ¶ 9.)  Such references appear on both the Power Juicer's website, and Defendant's corporate website.  (Id. ¶¶ 10-11.)  They also appear in infomercials and other advertisements.  (Id. ¶¶ 12, 17.)  For example, television infomercials aired by Defendant refer to the Power Juicer products as having "Patented Extraction Technology,"

_____

[2]     Under Rule 5.1 of the Federal Rules of Civil Procedure, a party asserting a constitutional challenge to a federal statute must provide the United States with notice of the same.  The United States then has 60 days to intervene, before which the court may not enter a final judgment holding a statute unconstitutional.  See Fed. R. Civ. P. 5.1(c).  Defendant provided the requisite notice in this case on March 18, 2011 and the Court subsequently certified Defendant's challenge in accordance with Rule 5.1.  On May 17, 2011, the 60 day period for intervention expired.  The United States filed a brief defending section 292(b)'s constitutionality shortly thereafter, and appeared for the same purpose in connection with a hearing on Defendant's motion to dismiss.

[3]     In accordance with the applicable standard of review, see infra Part III.A, the facts cited herein are derived from Plaintiff's complaint.

3

"Patented Extraction Technique," "Patented 3600 RPM Super Extraction Motor," and similar patented technology. (Id. ¶ 12.) One such infomercial aired on or about January 16, 2011. (Id.)

Notwithstanding the representations made in Defendant's advertisements, the only patent held for the Power Juicer line is a Chinese patent (the "China Patent") that covers the products' design aspects only. (See id. ¶¶ 13-15.) This patent represents Defendant's "complete and collective efforts to obtain any patent with respect to its Power Juicer line," (id. ¶ 14), and does not cover any of the Power Juicer lines' technology or address functional aspects such as juice extraction, (see id. ¶¶ 15-16.) Put another way, the China Patent has "nothing to do" with any of the abovementioned patent references made in Defendant's advertisements. (Id. ¶ 15.) Plaintiff confirmed as much by undertaking a "diligent patent search," which led Plaintiff to believe that Defendant's claims of having a patent on the Power Juicer's functional aspects, including juice extraction, are false and misleading. (Id. ¶ 16.)

## III. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all

allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal citations omitted). In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citation omitted).

Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Twombly, 550 U.S. at 555). The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949

(2009)).


B.  Discussion

The False Marking Statute provides that "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' . . . for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense."  35 U.S.C. § 292(a).  "Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States."  Id. § 292(b).  A plaintiff proceeding on a false marking claim must therefore "establish (1) the marking of an unpatented article; (2) with the intent to deceive the public." Hollander v. B. Braun Med., Inc., No. 10-835, 2011 WL 1376263, at *2 (E.D. Pa. Apr. 12, 2011); see also Rogers v. Conair Corp., No. 10-1497, 2011 WL 1809510, at *2 (E.D. Pa. May 12, 2011).

A plaintiff shows that an article is "unpatented" under the statute if "the article in question is not covered by at least one claim of each patent with which the article is marked." Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005).  This necessarily requires consideration of whether "the claims of a patent cover the article in question." Id.  In addition to showing that such an item is falsely marked, a plaintiff must demonstrate that the defendant "act[ed] with

sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." Id. Because this element sounds in fraud, Rule 9(b) applies and plaintiffs must therefore "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see In re BP Lubricants USA Inc., 637 F.3d 1307, 1311 (Fed. Cir. 2011) (applying Rule 9(b)'s "gatekeeping function" to claims under the False Marking Statute). This particularity requirement, however, does not apply to "[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b). Nevertheless, a plaintiff proceeding on a false marking claim must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." In re BP Lubricants, 637 F.3d at 1311 (quoting Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009)).

Here, Defendant argues that Plaintiff's complaint fails to satisfy the pleading standards set forth in Rules 8(a) and 9(b). Specifically, Defendant contends that Plaintiff's pleading does not allege any facts from which an intent to deceive the public may be inferred. In support of this contention, Defendant points to what is missing from Plaintiff's complaint:

> [Plaintiff] does not indicate that [Defendant] is listed as the assignee of record of over one dozen patents. [Plaintiff] does not address why any number of these patents do not apply to the accused products, nor does he address whether

7

> [Defendant] is the licensee to any other patents which may cover the accused products. [Plaintiff] further does not address whether an attempt to view or inspect any of the actual accused products was made, and whether any of those accused products are marked with a patent number.

(Def.'s Mot. to Dismiss, doc. no. 6, at 14-15.) Plaintiff responds that the complaint satisfies Rules 8(a) and 9(b) because it describes how, where, and when Defendant falsely advertised that its product's technology was patented when, in fact, it is not. Plaintiff is correct.

Plaintiff's complaint, after all, pleads that the only patent for the Power Juicer line of products does not cover the products' technology or address its functional aspects. (Compl. ¶¶ 15-16.) That is, that the Power Juicer "is not covered by at least one claim of each patent with which the article is marked." Clontech Labs., 406 F.3d at 1352. Nevertheless, Defendant has advertised the Power Juicer products as having such functions by marketing them as having "Patented Extraction Technology," "Patented Extraction Technique," "Patented 3600 RPM Super Extraction Motor," and similar patented technology. (Compl. ¶ 12.) One such advertisement aired on an infomercial on or about January 16, 2011. (Id.) Taken together, these underlying facts are sufficient to support the reasonable inference that Defendant acted with the intent to deceive a public. See In re BP Lubricants, 637 F.3d at 1311.

Such knowledge can be readily inferred because the

8

facts pled, if true, establish that Defendant's advertisements were a complete falsity. See U.S. ex rel. Hallstrom v. Aqua Flora, Inc., No. 10-1459, 2010 WL 4054243, at *1, 5 (E.D. Cal. Oct. 15, 2010) (applying Rule 9(b) and denying defendant's motion to dismiss where the complaint averred that the defendant falsely marketed its products as patented when there was no patent covering the product as advertised). Moreover, the allegations "address who, what, when, where, and how [Defendant] . . . allegedly violated the false marking statute." Id. at *5; see B. Braun Med., 2011 WL 1376263, at *3. Namely, that Defendant advertised on infomercials and the internet that the Power Juicer products are patented in a manner which they are not.

Under this posited scenario, Defendant cannot seriously contend that the requisite intent to deceive cannot be readily drawn from the facts pled.[4]  Indeed, Plaintiff's pleading sets

---

[4]     Moreover, Defendant's contention that Plaintiff's pleading fails because it omits certain details (such as reference to Plaintiff's inspection of the product) misunderstands what is required of a false marking claim under section 292. As set forth above, a plaintiff asserting a false marking claim must establish that the defendant marked an unpatented item as patented with the intent to deceive the public. Advertising an item in this manner, as the statute itself expressly states, gives rise to a cognizable false marking claim. See 35 U.S.C. § 292(a) (penalizing those who "use[] in advertising in connection with any unpatented article, the word 'patent' . . . ."); Hollander v. Timex Grp. USA, Inc., No. 10-429, 2011 WL 1399806, at *6 (E.D. Pa. Apr. 13, 2011) (discussing advertising as a basis for liability under the statute); Aqua Flora, Inc., 2010 WL 4054243, at *1, 5 (denying motion to dismiss false marking claim predicated on alleged false advertisements). Viewing the facts pled in the light most

forth facts which, if true, prove that the patent Defendant
advertised never existed at all.  Cf. Pequignot v. Solo Cup Co.,
608 F.3d 1356, 1364 (Fed. Cir. 2010) ("Regarding the expired
patent markings, we agree . . . that, without more, when 'the
false markings at issue are expired patents that had previously
covered the marked products, the . . . presumption of intent to
deceive is weaker.'" (quoting Pequignot v. Solo Cup Co., 646 F.
Supp. 2d 790, 797 (E.D. Va. 2009))); B. Braun Med., 2011 WL
1376263, at *3 (dismissing false marking claims where the
plaintiff alleged the defendant knew, based on its
sophistication, that it was improperly marking its products with
expired patents).  These factual allegations support the rational
inference that Defendant's advertisements intended to deceive the
public.  See Clontech, 406 F.3d at 1352-53 ("[T]o establish
knowledge of falsity, the plaintiff must show by a preponderance
of the evidence that the party accused of false marking did not
have a reasonable belief that the articles were properly marked .
. . .").

        Thus, the Court will deny Defendant's motion to dismiss
for failure to state a claim upon which relief can be granted.

---

favorable to Plaintiff and drawing all inferences in his favor,
see DeBenedictis, 492 F.3d at 215, Plaintiff's complaint plainly
establishes that Defendant violated the statute by falsely
advertising the Power Juicer products as patented when they had
no patent covering the product as stated, (see Compl. ¶¶ 14, 16.)

**IV.  DEFENDANT'S MOTION TO DISMISS ON CONSTITUTIONAL GROUNDS**

Defendant next argues that the <u>qui tam</u> provision of the False Marking Statute violates Article II of the United States Constitution.  Because Plaintiff proceeds in this false marking case as a <u>qui tam</u> relator, <u>see</u> 35 U.S.C. § 292(b) ("Any person may sue for the penalty [provided under the statute], in which event one-half shall go to the person suing and the other to the use of the United States."), Defendant asks the Court to dismiss Plaintiff's complaint in its entirety.  In the Court's view, although not previously subjected to robust judicial treatment, Defendant's constitutional challenge is best understood in the context of the False Marking Statute's history.  The Court's discussion therefore begins with the relevant historical background.

A.    <u>Historical Background</u>

1.    <u>Legislative History</u>

Congress enacted the first iteration of the False Marking Statute in 1870, establishing "a penalty of not less than one hundred dollars, with costs" for every violation of the statute.  Patent Act of 1870, ch. 230, § 39, 16 Stat. 198, 203.  This remedy was to be pursued exclusively by private citizens in exchange for half of the penalty recovered:

> [Any person who violates the statute] shall be liable for
> every such offense to a penalty of not less than one hundred

dollars, with costs; one moiety of said penalty to the person who shall sue for the same, and the other to the use of the United States, to be recovered by suit in any district court of the United States within whose jurisdiction such offense may have been committed.

Id. Congress revised the statute in 1952, replacing the $100 minimum penalty with a $500 maximum penalty. See Patent Act of 1952, ch. 950, § 292(a), 66 Stat. 792, 814 (stating that those who violate the statute "[s]hall be fined not more than $500 for every such offense"); S. Rep. No. 82-1979, at 22 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2424 ("The minimum fine, which has been interpreted by the courts as a maximum, is replaced by a higher maximum.").

In addition, the 1952 amendment made the statute a criminal one that could be enforced by either the United States or by qui tam relators. See S. Rep. No. 82-1979, at 9 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2403 ("[T]his section . . . makes it an ordinary criminal action as well as an informer action as in the present statute."). The statute remains in such form today; section 292(a) constitutes the criminal provision, while section 292(b) serves as the separate qui tam enforcement mechanism. See 35 U.S.C. § 292; S. Rep. No. 82-1979, at 22 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2424 (stating that the "informer action is included as additional to an ordinary criminal action").

## 2. Recent Caselaw Developments

Despite its lengthy history, much of the statute's legal development has occurred in the wake of the Federal Circuit's 2009 ruling that the False Marking Statute "requires the [statutory] penalty to be imposed on a per article basis." Forest Grp., Inc. v. Bon Tool Co., 590 F.3d 1295, 1301 (Fed. Cir. 2009). Indeed, by ruling that each individual violation of the statute gives rise to a separate penalty as opposed to one penalty for the decision to falsely mark several items, the Forest Group decision prompted the "cottage industry of false marking litigation by plaintiffs who have not suffered any direct harm" that the Federal Circuit undoubtedly envisioned. Forest Grp., 590 F.3d at 1303 (internal marks omitted); see Thomas F. Cotter, Optimal Fines for False Patent Marking, 17 Mich. Telecomm. & Tech. L. Rev. 181, 183 (2010) ("Not surprisingly, Forest Group quickly generated a cottage industry of false patent marking suits directed against some of the nation's largest corporations."). This trend was reinforced by a more recent decision holding that the statute can be violated where an item is marked as patented with a patent number that has since expired. See Pequignot, 608 F.3d at 1361 (holding "that an article covered by a now-expired patent is 'unpatented'" under the statute).

Given the considerable increase in qui tam litigation

under the statute and the high stakes <u>Forest Group</u>'s valuation

method gives rise to, false marking defendants have vigorously

pursued a number of different legal challenges to the statute.

For example, many defendants have asserted Article III standing

objections which, initially, some courts accepted on the grounds

that the statute assigns to "any person" the right to enforce the

United States' sovereign interest in having its laws followed.[5]

---

[5]     In doing so, courts distinguished the Supreme Court's
ruling that False Claims Act <u>qui tam</u> relators have standing due
to a partial assignment of the government's rights and injuries.
<u>See</u> <u>Vt. Agency of Natural Res. v. U.S. ex rel. Stevens</u>, 529 U.S.
765, 773 (2000) ("We believe . . . that adequate basis for the
relator's suit for his bounty is to be found in the doctrine that
the assignee of a claim has standing to assert the injury in fact
suffered by the assignor.") Before approving standing under this
theory, however, the Supreme Court observed that False Claims Act
<u>qui tam</u> suits seek redress for two distinct injuries to the
United States—namely, "the injury to its sovereignty arising from
violation of its laws (which suffices to support a criminal
lawsuit by the Government) and the proprietary injury resulting
from the alleged fraud." <u>Id.</u> at 771.

        Seizing on the distinction between proprietary and
sovereign injuries, courts accepting Article III challenges to
section 292(b) held that <u>Vermont Agency</u> does not allow otherwise
uninterested parties to sue by virtue of the <u>qui tam</u> provision
because section 292 violations constitute purely sovereign
injuries that cannot be assigned. <u>See</u> <u>U.S. ex rel. FLFMC, LLC v.
Wham-O, Inc.</u>, No. 10-0435, 2010 WL 3156162, at *8 (W.D. Pa. Aug.
3, 2010) ("The Court concludes that general standing principles
are consistent with assignment principles, and therefore,
plaintiff cannot claim representational standing because the
government cannot assign a purely 'sovereign injury' to a private
party."); <u>Stauffer</u>, 615 F. Supp. 2d at 254 ("In most <u>qui tam</u>
actions, the alleged injury in fact to the United States as
assignor is obvious and proprietary. . . . In the context of a
section 292 claim, however, the injury to the United States as
assignor is far less evident."). The Federal Circuit rejected
this distinction entirely, concluding that <u>qui tam</u> relators had
standing to sue even if the injury sustained by the United States

See, e.g., Stauffer v. Brooks Bros., Inc., 615 F. Supp. 2d 248,
254 (S.D.N.Y. 2009), rev'd, 619 F.3d 1321 (Fed. Cir. 2010).
While the Federal Circuit's holding that qui tam relators have
Article III standing under a "statutory assignment of the United
States' rights" appears to foreclose future standing objections,
Stauffer, 619 F.3d at 1325, it has not stopped false marking
defendants from asserting new constitutional defenses which the
Stauffer court did not reach, see id. at 1327 (reserving the
question of section 292(b)'s constitutionality under Article II
for another day).

    B.    Current Constitutional Landscape

          Defendant's contention that section 292(b) violates
Article II's Take Care Clause is illustrative of this
development.[6]  According to Defendant, section 292(b) runs afoul
of the Take Care Clause because it impermissibly delegates the
Executive Branch's prosecutorial authority to private citizens.[7]

_____

was a purely sovereign one.  See Stauffer, 619 F.3d at 1326
("Contrary to the district court's decision . . . Stauffer's
standing as the United States' assignee does not depend upon the
alleged injury to the United States being proprietary, as opposed
to sovereign."); see also Juniper Networks, Inc. v. Shipley, ---
F.3d ----, 2011 WL 1601995, at *6 (Fed. Cir. Apr. 29, 2011).

    [6]    The Take Care Clause provides that the President "shall
take Care that the Laws be faithfully executed."  U.S. Const.
art. II, § 3.

    [7]    Defendant, in an entirely conclusory and unhelpful
fashion, also reasons that the qui tam provision violates the

Pointing to the fact that the False Marking Statute is a "criminal one," Pequignot, 608 F.3d at 1363; S. Rep. No. 82-1979, at 9 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2403, Defendant asks the Court to apply the "sufficient control" test from Morrison v. Olson and find that section 292(b) does not afford the Executive Branch "sufficient control . . . to ensure that the President is able to perform his constitutionally assigned duties," 487 U.S. 654, 696 (1988).

In the wake of the Federal Circuit's decision in Stauffer, several false marking defendants have lodged similar contentions with varying results.[8]  To date, only one court has accepted such challenges to the False Marking Statute's constitutionality.  See Unique Prod. Solutions, Ltd. v. Hy-Grade Valve, Inc., --- F. Supp. 2d ----, 2011 WL 649998, at *7 (N.D. Ohio Feb. 23, 2011) ("[T]he qui tam provision of the False

_____

Appointments Clause.  See U.S. Const. art. II, § 2, cl. 2.  For the reasons set forth infra in Part IV.C, resolution of this challenge is not necessary to this Court's disposition. Therefore, the Court will not address this issue any further.

[8]    Such contentions were raised prior to Stauffer, too. See, e.g., Pequignot v. Solo Cup Co., 640 F. Supp. 2d 714, 728-29 (E.D. Va. 2009) (rejecting Take Care Clause challenge).  A separate order of the Pequignot district court was subsequently appealed to the Federal Circuit.  As discussed further infra, the resulting decision provided additional clarity concerning whether section 292 functions as a civil or criminal statute.  See Pequignot, 608 F.3d at 1363 (stating that "[t]he bar for proving deceptive intent . . . is particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine").

Marking Statute, 35 U.S.C. § 292(b) is unconstitutional under the Take Care Clause of the United States Constitution . . . ."), reaff'd on reconsideration, No. 10-1912, 2011 WL 924341 (N.D. Ohio Mar. 14, 2011).  That court applied Morrison's sufficient control test to the statute, and found that section 292(b) unconstitutionally delegates prosecutorial authority to private citizens.[9]  Other courts have strongly disagreed with this conclusion.  See, e.g., Ford v. Hubbell Inc., No. 10-513, 2011 WL 1259707, at *3 (S.D. Ill. Mar. 31, 2011); Luka v. Procter & Gamble Co., --- F. Supp. 2d ----, 2011 WL 1118689, at *7 (N.D. Ill. Mar. 28, 2011); Public Patent Found., Inc. v. GlaxoSmithKline Consumer Healthcare, L.P., No. 09-5881, 2011 WL 1142917, at *4 (S.D.N.Y. Mar. 22, 2011).

The Court now turns to summarize Morrison's test, before discussing the split in authority amongst courts considering the constitutional challenge asserted.


1.   Morrison's Sufficient Control Test

In Morrison v. Olson, the Supreme Court considered a constitutional challenge to the Ethics in Government Act (the

_____

[9]   The Unique court's judgment was appealed to the Federal Circuit.  The constitutionality of section 292(b) is also before the Federal Circuit in United States ex rel. FLFMC, LLC v. Wham-O, Inc., No. 2011-1067.  Briefing in that case was completed on April 12, 2011, and oral argument is currently set for July 7, 2011.

"EGA") which permitted the "appointment of an 'independent counsel' to investigate and, if appropriate, prosecute certain high-ranking Government officials for violations of federal criminal laws." 487 U.S. at 660. Specifically, the Court evaluated, in relevant part, whether the EGA violated separation of powers principles by "reducing the President's ability to control the prosecutorial powers wielded by the independent counsel." Id. at 685.

Espousing and applying the abovementioned sufficient control test, the Court upheld the EGA. In doing so, it pointed to the fact that (1) the Attorney General had the power to remove the independent counsel for good cause; (2) the decision to appoint an independent counsel was within the Attorney General's discretion; (3) the independent counsel's jurisdiction was defined by reference to facts submitted by the Attorney General; and (4) the independent counsel was required to comply with Justice Department policy whenever possible. See id. at 696. Under these circumstances, the Court concluded, the EGA did not violate separation of powers principles because it left the Executive Branch with "sufficient control over the independent counsel to ensure that the President is able to perform his constitutionally assigned duties." Id.

2.    <u>Caselaw Finding Section 292(b) Unconstitutional</u>

Drawing on the analysis in <u>Morrison</u>, the <u>Unique</u> court held that section 292(b) violates the Take Care Clause because it does not afford the President sufficient control over litigation commenced under the False Marking Statute.  Central to this finding, of course, is the <u>Unique</u> court's corresponding determination that the test set forth in <u>Morrison</u> applies in the first instance.  This conclusion, as the <u>Unique</u> court acknowledged, <u>see Unique</u>, 2011 WL 649998, at *4, has been a subject of some debate; several courts have held that <u>Morrison</u> does not neatly apply to challenges to <u>qui tam</u> statutes.

For example, the en banc Fifth Circuit held that <u>Morrison</u> was not necessarily relevant to determining the constitutionality of the False Claims Act's <u>qui tam</u> provision because (1) the EGA assigned the independent counsel the responsibility of acting on behalf of the United States while <u>qui tam</u> relators under the False Claims Act merely "bring a lawsuit in the name of the United States"; and (2) unlike the independent prosecutors empowered to undertake criminal prosecutions for the United States under the EGA, "relators are simply civil litigants."  <u>Riley v. St. Luke's Episcopal Hosp.</u>, 252 F.3d 749, 755 (5th Cir. 2001) (en banc).  For substantially similar reasons, the Eastern District of Virginia deemed <u>Morrison</u> inapplicable to a challenge to the False Marking Statute's <u>qui</u>

tam provision.  See Pequignot, 640 F. Supp. 2d at 726-27 (holding
"it is not necessary for § 292(b) to meet the demanding standard
applied by the Supreme Court in Morrison," largely because the
action pursued by a section 292(b) relator is "a civil action,
not a criminal one").

Despite this contrary authority, the Unique court
concluded that Morrison's test governed its analysis.  First, it
intimated that it was bound to apply Morrison's sufficient
control test given that the Sixth Circuit had done so in
upholding the constitutionality of the qui tam provision in the
False Claims Act.  See Unique Prod., 2011 WL 649998, at *3 ("The
Sixth Circuit Court of Appeals has relied upon Morrison to uphold
the qui tam provisions of the [False Claims Act] . . . ." (citing
U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co., 41 F.3d
1032 (6th Cir. 1994))); Unique Prod., 2011 WL 924341, at *3
("[T]he Court believes that, because it must follow the Sixth
Circuit's application of the Morrison analysis to the non-patent
False Claims Act, consistency requires the Morrison analysis to
apply to the False Marking Statute, as well.").  Second, the
Unique court expressly disagreed with Riley and Pequignot because
(1) it saw "no material difference between bringing a suit 'in
the name of' as opposed to 'as' the United States"; and (2) the
Federal Circuit's Pequignot decision had clarified that section

292 was, in fact, a criminal statute.[10]  See Unique Prod., 2011
WL 649998, at *5.

Having concluded that the Morrison analysis controlled
the inquiry, the Unique court held that the qui tam provision in
the False Marking Statute was unconstitutional because it
conferred law enforcement authority upon private individuals
without sufficient reservation of control to the United States:

> As discussed, supra, unlike the [False Claims Act], the False
> Marking statute lacks any of the statutory controls necessary
> to pass Article II Take Care Clause muster.  The False Marking
> statute essentially represents a wholesale delegation of
> criminal law enforcement power to private entities with no
> control exercised by the Department of Justice.  It is unlike
> any statute in the Federal Code with which this Court is
> familiar.  Any private entity that believes someone is using
> an expired or invalid patent can file a criminal lawsuit in
> the name of the United States, without getting approval from
> or even notifying the Department of Justice.  The case can be
> litigated without any control or oversight by the Department
> of Justice.  The government has no statutory right to
> intervene nor does it have a right to limit the participation
> of the relator.  The government does not have the right to
> stay discovery which may interfere with the government's
> criminal or civil investigations.  The government may not
> dismiss the action.  Finally, the relator may settle the case
> and bind the government without any involvement or approval by
> the Department of Justice.

Id. at *6 (internal citation omitted).  This delegation of
authority, as the Unique court found, is particularly troublesome
in light of the recent developments described supra in Part

---

[10]  As explained in note 8, a separate order of the
Pequignot district court was appealed to the Federal Circuit.
The Federal Circuit's decision, which stated that the False
Marking Statute is a criminal statute, see Pequignot, 608 F.3d at
1363, came out after the Pequignot district court rejected the
Take Care Clause challenge.

IV.A.2:

> The danger of this uncontrolled privatization of law enforcement is exacerbated by the financial penalties in this statute. The penalty is up to $500 for each article falsely marked. Depending upon the number of items, this could be a staggering amount of money or a trivial amount. The statutory penalty is not calibrated to the size or economic strength of the defendant, the significance of the product, or to the degree of competitive harm the false marking may have had beyond simply the gross number of articles falsely marked. It is therefore essential that the government have control over when such cases are brought, and most importantly, how they are settled. Such decisions should be made by government attorneys who have no financial stake in the outcome of the litigation or settlement, not by private parties motivated solely by the prospect of financial gain.

Id. (internal citations omitted).

For these reasons, the Unique court concluded that section 292(b) fails Morrison's sufficient control test and violates the Take Care Clause. See id. at *7.


   3.   Caselaw Rejecting Constitutional Challenges to
        Section 292(b)

In so holding, the Unique court's decision lives up to its name; to date, every other court that has considered section 292(b)'s constitutionality under Article II has rejected the challenge asserted. See Simonian v. Allergan, Inc., No. 10-2414, 2011 WL 1599292, at *4-5 (N.D. Ill. Apr. 28, 2011); Luka, 2011 WL 1118689, at *8; Ford, 2011 WL 1259707, at *3; Buehlhorn v. Univ. Valve Co., No. 10-559, 2011 WL 1259712, at *4 (S.D. Ill. Mar. 31, 2011); Public Patent Found., 2011 WL 1142917, at *4 (S.D.N.Y. Mar. 22, 2011); Hy Cite Corp. v. Regal Ware, Inc., No. 10-168,

22

2011 WL 1206768, at *4 (W.D. Wis. Mar. 15, 2011); <u>Shizzle Pop, LLC v. Wham-O, Inc.</u>, No. 10-3491, 2010 WL 3063066, at *3 (C.D. Cal. Aug. 2, 2010); <u>Zojo Solutions, Inc. v. Stanley Works</u>, 712 F. Supp. 2d 756, 758 (N.D. Ill. 2010); <u>Pequignot</u>, 640 F. Supp. 2d at 728.  The Northern District of Illinois' decision in <u>Simonian</u> is illustrative of such cases.  Rejecting <u>Unique</u>, the <u>Simonian</u> court held that <u>Morrison</u> does not apply to the same degree insofar as the action under which a false marking relator proceeds is a civil action.  See <u>Simonian</u>, 2011 WL 1599292, at *4.

The <u>Simonian</u> court found, moreover, that section 292(b) provides sufficient safeguards to the government's interests. <u>See</u> <u>id.</u>  For example, following actions under section 292, (1) district court clerks are required to apprise the Executive Branch of the action, <u>see</u> 35 U.S.C. § 290 (requiring the clerks of the United States courts to give notice of claims brought under Title 35 to the Director of the Patent and Trademark Office ("PTO")); (2) the government may intervene in the action, <u>see</u> Fed. R. Civ. P. 24; and (3) any settlement would require the government's approval following intervention, <u>see</u> Fed. R. Civ. P. 41(a)(1)(A)(ii) (dismissal by the plaintiff is permissible provided a "stipulation of dismissal" is "signed by all parties who have appeared").

Finally, as courts rejecting Take Care Clause challenges to section 292(b)'s <u>qui tam</u> provision often do, the

_Simonian_ court pointed to practical considerations militating against finding the statute unconstitutional.  See _Simonian_, 2011 WL 1599292, at *5 (noting that the Federal Circuit would have addressed the issue _sua sponte_ if it perceived a Take Care Clause problem); _see also_ _Hy Cite Corp._, 2011 WL 1206768, at *5 ("[D]efendants have not only failed to show that the government's ability to exercise authority in this case through the cited avenues has been thwarted or even inhibited, the government's participation as _amicus_ is strong evidence to the contrary.").

It is against this legal landscape that the Court turns to evaluate Defendant's constitutional challenge.


C.    Discussion

Separation of powers is deeply embedded in our constitutional structure, reflecting the Framer's recognition that "structural protections against abuse of power [are] critical to preserving liberty."  _Bowsher v. Synar_, 478 U.S. 714, 730 (1986); _see_ _Buckley v. Valeo_, 424 U.S. 1, 122 (1976) ("The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other.").  Broadly speaking, it is violated when one branch of government aggrandizes itself at the expense of another, _see_ _Bowsher_, 478 U.S. at 727-28, or when one branch of

government "impermissibly undermine[s]" another branch, <u>Commodity Futures Trading Comm'n v. Schor</u>, 478 U.S. 833, 856 (1986).


### 1.   <u>Morrison's Sufficient Control Test Governs</u>

Here, the question presented to the Court is whether the False Marking Statute's <u>qui tam</u> provision violates separation of powers by impermissibly undermining the President's ability to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  In considering the same inquiry with respect to the False Claims Act's <u>qui tam</u> mechanism, many courts have applied <u>Morrison</u>'s sufficient control test and upheld the <u>qui tam</u> provision in light of the controls the False Claims Act reserves for the Executive Branch.  <u>See, e.g.</u>, <u>Taxpayers Against Fraud</u>, 41 F.3d at 1041; <u>U.S. ex rel. Kelly v. Boeing Co.</u>, 9 F.3d 743, 754-55 (9th Cir. 1993); <u>U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.</u>, 985 F.2d 1148, 1155 (2d Cir. 1993).[11]  While some courts have disagreed with this mode of analysis for <u>qui tam</u> statutes, <u>see</u> <u>Riley</u>, 252 F.3d at 755; <u>Pequignot</u>, 640 F. Supp. 2d at 726-27, the Court concludes that <u>Morrison</u>'s test is

---

[11]   Although the Second Circuit's <u>Kreindler</u> decision did not cite <u>Morrison</u>, it analyzed the False Claims Act's constitutionality by reference to the degree of control afforded to the Executive Branch.  <u>See</u> <u>Kreindler</u>, 985 F.2d at 1155 (holding the False Claims Act's <u>qui tam</u> provision does "not usurp the executive branch's litigating function because the statute gives the executive branch substantial control over the litigation").

controlling for two reasons.

First, the Court believes that the nature of <u>qui tam</u> actions necessarily requires inquiry into whether the relevant <u>qui tam</u> provision affords the Executive Branch "sufficient control . . . to ensure that the President is able to perform his constitutionally assigned duties."  487 U.S. at 696.  <u>Qui tam</u> statutes, after all, always reflect at least some delegation of the Executive Branch's law enforcement authority.  See <u>Brockovich v. Cmty. Med. Ctrs., Inc.</u>, No. 06-1609, 2007 WL 738691, at *5 (E.D. Cal. Mar. 7, 2007) (noting that "<u>qui tam</u> statutes generally have important procedural safeguards, since they involve the delegation of some sovereign attributes from the government to the private citizen" (internal marks omitted)); see also <u>Marra v. Burgdorf Realtors, Inc.</u>, 726 F. Supp. 1000, 1013 (1989).  It is necessary to carefully evaluate whether, under the circumstances, the delegation made offends the Constitution's structural protections; <u>Morrison</u>'s test facilitates this type of inquiry.[12]

_____

[12]     The Court recognizes that the rich history of <u>qui tam</u> statutes may militate in favor of rejecting the constitutional challenge lodged in a particular case.  See <u>Vt. Agency</u>, 529 U.S. at 801 (Stevens, J., dissenting) (stating that the historical evidence of <u>qui tam</u> actions "together with the evidence that private prosecutions were commonplace in the 19th century, is . . . sufficient to resolve the [Take Care Clause] question").  This history, however, does not obviate the need to methodically assess whether the <u>qui tam</u> provision in question offends separation of powers by depriving the Executive Branch of the controls necessary to allow the President to perform his constitutionally assigned duties.

Second, the Court agrees with the <u>Unique</u> court that section 292(b) represents the very delegation of criminal law enforcement authority that <u>Morrison</u>'s test was designed to assess. Its legislative history reveals as much: a key purpose of the 1952 amendment was to transform the statute into an ordinary criminal statute with a private enforcement mechanism. <u>See</u> <u>supra</u> Part IV.A.1. That the private enforcement mechanism happens to be civil in form does not change the fact that the wrong for which it enables relators to seek redress is the injury the United States suffers when a person or entity violates federal law.[13] <u>See</u> <u>Pequignot</u>, 608 F.3d at 1363 (stating "that the false marking statute is a criminal one, despite being punishable only with a civil fine" and that the <u>qui tam</u> provision "arises under a criminal statute").

The Court, therefore, will proceed to evaluate section 292(b) under <u>Morrison</u>'s sufficient control test.

---

[13] As discussed in note 5, the Federal Circuit recently rejected a standing challenge to section 292(b), holding that the sovereign injury to the United States caused by a violation of the False Marking Statute sufficed to establish Article III standing for otherwise uninjured <u>qui tam</u> relators. <u>See</u> <u>Stauffer</u>, 619 F.3d at 1326. Based on this conclusion, the <u>Stauffer</u> court deemed it unnecessary to definitively decide whether "section 292 addresses a proprietary or a sovereign injury of the United States, or both (as does the False Claims Act. . . .)." <u>Id.</u> Nevertheless, the Court believes that a section 292(b) relator asserts an exclusively sovereign interest inasmuch as (1) the statute giving rise to the cause of action is a criminal one; with (2) no apparent proprietary harm caused by violations.

2. <u>Application of Morrison</u>

Applying <u>Morrison</u>, the Court finds that section 292(b) fails to provide the Executive Branch sufficient safeguards "to ensure that the President is able to perform his constitutionally assigned duties." 487 U.S. at 696.

A comparison to the False Claims Act illustrates section 292(b)'s constitutional deficiency. The False Claims Act's <u>qui tam</u> provision requires the United States to: receive the complaint and relevant information before the defendant is served, <u>see</u> 31 U.S.C. § 3730(b)(2); have an evaluatory period during which the complaint is filed under seal and the defendant is not apprised of the complaint, <u>see</u> <u>id.</u>; and have the "primary responsibility" for prosecuting the case if it elects to intervene in the case, <u>see</u> <u>id.</u> § 3730(c)(1). In addition, the United States enjoys significant rights in False Claims Act <u>qui tam</u> litigation, including the right to: not be bound by the relator's acts if it opts to intervene, <u>see</u> <u>id.</u>; seek dismissal or settlement of the action over the relator's objections, <u>see</u> <u>id.</u> § 3730(c)(2)(A)-(B); and prevent dismissal by the relator, <u>see</u> <u>id.</u> § 3730(b)(1). Moreover, in the event the United States opts not to intervene, it still enjoys the right to: limit discovery, <u>see</u> <u>id.</u> § 3730(c)(4); and receive all pleadings upon

request, see id. § 3730(c)(3).[14]

The False Marking Statute, by contrast, contains no such statutory limitations on its qui tam provision. Broadly permitting "any person" to "sue for the [$500] penalty" in section 292(a), it requires no notice to the United States, and provides no means by which the United States may control the initiation, prosecution, or termination of litigation commenced on its behalf. 35 U.S.C. § 292(b). The what, when, where, and how of the litigation remain subject to the whims of whomever sees fit to bring the suit. Under these circumstances, the statute "essentially represents a wholesale delegation of criminal law enforcement power to private entities with no control exercised by the Department of Justice." Unique, 2011 WL

_____

[14] The origin of these statutory controls can be traced to a 1943 amendment that sought "to make the United States the master of pending qui tam suits." U.S. ex rel. Bayarsky v. Brooks, 154 F.2d 344, 346 (3d Cir. 1946). The initial iteration of the False Claims Act did not have such limitations on the relator's ability to conduct False Claims Act litigation, see Act of Mar. 2, 1863, ch. 67, § 6, 12 Stat. 696, 698, and led to a regime in which relators brought False Claims Act suits alleging fraud that was already known and subject to prosecution by the government, see U.S. ex rel. Marcus v. Hess, 317 U.S. 537, 545-46 (1943). The 1943 amendments served "to restrict and limit informer suits to cases in which facts are voluntarily disclosed to the Department of Justice, which facts are not then in their possession." U.S. ex rel. Coates v. St. Louis Clay Prods. Co., 65 F. Supp. 645, 650 (E.D. Mo. 1946). They also sought to put "such suits . . . in charge of the United States when considered desirable by the Attorney General." Bayarsky, 154 F.2d at 346. In 1986, the False Claims Act was amended again, increasing the United States' control over qui tam litigation. See generally S. Rep. No. 99-345 (1986), reprinted in 1986 U.S.C.C.A.N. 5266.

649998, at *6.  And given the available financial penalties under Forest Group, this lack of control is all the more troubling.[15] See id.

Moreover, the supposed protections created by other sources of law simply do not suffice to ensure that the President can take care that the laws of the United States be properly carried out.  Cf. Simonian, 2011 WL 1599292, at *5 (concluding that "the government maintains a sufficient level of control over qui tam actions brought under Section 292(b)").  First, the fact that notice of all pending patent cases is provided to the PTO within one month of filing, see 35 U.S.C. § 290, does not constitute sufficient notice to the Executive Branch.  This notice is not expedient enough to provide the United States with sufficient time to protect its interests, and is not directed to the Department of Justice—the agency responsible for representing the United States' interests in a false marking suit.  See Unique, 2011 WL 649998, at *5 ("[B]y the time the government is informed by the clerk of an action being filed, the case may have

_____

[15]    Congress evidently agrees.  On March 8, 2011, the Senate passed a measure that would only allow the United States to sue for the $500 maximum penalty.  See America Invents Act, S. 23, 112th Cong. § 2(k)(1) (as passed by the Senate, Mar. 8, 2011).  Under the proposed bill, the qui tam provision would be replaced entirely, and private individuals would only be permitted to bring a civil action upon suffering a competitive injury from a violation of the statute.  Id.  The amendments would "apply to all cases, without exception, pending on or after the date of the enactment of th[e] Act."  Id. § 2(k)(2).

already been settled.  This presents a unique problem with False Marking <u>qui tam</u> actions because relators are likely to be interested in a quick settlement without the delay and expense of protracted litigation.").

Second, the availability of intervention under the Federal Rules of Civil Procedure and the corresponding protections associated with intervention do not go far enough. While the United States could prevent a section 292(b) relator from voluntarily dismissing the case upon intervention, <u>see</u> Fed. R. Civ. P. 41(a)(1)(A)(ii), this requires the Court to order intervention on the United States' motion in the first instance, <u>see</u> Fed. R. Civ. P. 24.  Although the Federal Circuit has reversed a district court for refusing to permit intervention in a false marking suit under Rule 24(a)(2), <u>see</u> <u>Stauffer</u>, 619 F.3d at 1328, it is not clear to the Court that intervention will or must be ordered in any given case.  Moreover, as noted, a section 292(b) relator could voluntarily dismiss a case before the United States even has the opportunity to seek intervention at all.  <u>See</u> Fed. R. Civ. P. 41(a)(1)(A)(i); <u>Unique</u>, 2011 WL 649998, at *5.

Thus, despite the external protections available, the United States is not able to effectively exercise even a basic degree of control over a section 292(b) relator's case.[16]  The

_____

[16]    Moreover, while not relevant to the constitutional question presented, the amendments to the False Claims Act discussed in note 14 demonstrate that the supposed protections

relator, by bringing the suit, is the master of the suit and—unlike in the False Claims Act context—remains as such. Indeed, unlike the rights it enjoys in False Claims Act _qui tam_ litigation, the United States has no ability to (1) control the litigation by seeking dismissal or settlement over objection; (2) limit discovery in any meaningful way; or (3) take primary control over the litigation.

For these reasons, the Court finds that section 292(b) fails to provide "the Executive Branch sufficient control . . . to ensure that the President is able to perform his constitutionally assigned [duty]" to "take Care that the Laws be faithfully executed." _Morrison_, 487 U.S. at 696; U.S. Const. art. II, § 3. Consequently, the Court concludes that section 292(b) violates the Take Care Clause.

## V. CONCLUSION

For the reasons explained above, Defendant's motion to dismiss for failure to state a claim will be denied. Because the Court finds section 292(b) to be unconstitutional under Article II's Take Care Clause, Defendant's motion to dismiss on constitutional grounds will be granted. An appropriate Order

created by other sources of law are overstated. Congress, after all, found it necessary to increase the United States' control of False Claims Act _qui tam_ litigation despite the existence of the same protections cited as adequately protecting the United States' interests in false marking litigation.

will follow.